Good morning, Your Honors. My name is Mark Hornstein, and I represent Leonard McSherry. Good morning. Three years ago, and I'd like to – I understand the rule. Three years ago, the last time I stood before this Court on this case, the trial judge had dismissed Leonard McSherry's complaint, essentially on the grounds that McSherry had presented no facts concerning fabricated evidence and that defendants were entitled to qualified immunity as a matter of law. This Court unanimously reversed and held as follows. Quote, the facts alleged by McSherry support a claim of deliberate fabrication, and thus, on the basis of the pleadings, the defendants are not entitled to qualified immunity as a matter of law. Well, counsel, what you're conveniently gliding over is that this case started out as a Rule 50 motion, and it came up to the Ninth Circuit, and the holding of the Ninth Circuit is that the pursuit by the prosecution of a Rule 50 motion, or the government, the lawyers' Rule 50 motion, was improper. And that was the ground on which we sent it back. Now, we said a whole lot of stuff that's dicta while we did that, but it was the Rule 50 problem that caused the trouble, and we specifically said this had to go by way of motion for summary judgment. So when it went back, then it was dealt with as a motion for summary judgment. There's no definitive holding that I could see that says there is a genuine issue of material fact and it has to go past summary judgment. No. The genuine issue, Your Honor, is that this Court said that if McSherry presented evidence of fabrication concerning the description of the interior of his grandparents' house and that there's evidence that she was never in the house, those are the allegations. If we could present evidence of those things, then this Court held that that raises a disputed issue of fact. That's simply not right as a matter of summary judgment law. Presenting some evidence doesn't necessarily create a genuine issue of material fact. And certainly in the prior panel decision, the Court wasn't discussing, wasn't considering, wasn't facing at all the question of how much evidence does it take to survive summary judgment. And we know just as a matter of summary judgment law that some evidence, the fact that there's some dispute, does not necessarily make a genuine issue. The prior panel identified the evidence and identified the allegations. Identified the issue, identified the allegation, but it did not deal with how much evidence she had to prove or had to offer up on that issue to establish a genuine issue. No. They said that if you could show that the victim did not provide and could not have provided the detailed description of the interior of the house with Shirley testified and his report said the rape had occurred, then that raises a disputed issue of fact concerning the allegation of fabricated evidence. Is it your position that McSherry won, as I'll call it, precluded any possibility that the trial judge might grant a motion for summary judgment on this ground? No. That it simply arced over it and said you've got to go to trial? Absolutely not. But they did say that if you've presented evidence consistent with your allegations, that creates a disputed issue of fact and you have to have a trial. And that's exactly what we do. That's the issue. It doesn't have anything to do with McSherry won. It was remanded for whatever proceedings the district court deems appropriate, which means a motion for summary judgment. So why don't you just go to whether or not it was appropriate to grant the motion for summary judgment instead of muck around in something that's irrelevant? Because this court gave both sides and the trial judge a road map. But I'll go to the evidence, Your Honor, that supports the ‑‑ that is consistent with the road map in McSherry won. I wanted to just find out what's on the plate and off the plate before you go forward. Sure. Since we're not really approaching this as law of the case. We want to hear, you know, what we have in front of us. In looking at your brief, down below you had Monell claims and the court, you know, didn't find ‑‑ I don't see that you're raising those again. Have you abandoned those? No, no. The Monell claim ‑‑ I mean, the judge held that you don't have one because he found qualified immunity by the actors that were acting on behalf of the city. If and when the case is reversed and it goes to trial, those Monell claims are back if there is, in fact, no qualified immunity. Well, but a Monell claim is more than that. And I don't see ‑‑ because you have to be able to show that there are certain training issues and all of that. I don't see that ‑‑ I don't see how you really preserved that. Well, we have an argument in the appellate brief, in the opening brief. On the ‑‑ on page 42 of the appellate brief, the liability to the city could not be determined on summary judgment. And I think that's sufficient to preserve the claim in the event that there is a reversal, because the judge, in fact, ruled that there was no Monell claim because of the qualified immunity that he believed the two officers were entitled to. To be more specific, the district court ruled there was no constitutional violation by the officers, so there can't be a claim against the city. And your argument today, I guess, is that there is a constitutional violation by the officers, so the premise for the district court's ruling is that the city drops off. Correct. That's right. Now, we know conclusively that McSherry was, in fact, innocent. And based on the evidence before Judge Klausner, the jury could find from the inferences to be drawn from that evidence, that Turley and Roberson knew McSherry was an innocent man back then. Let me walk you through the evidence that was before the trial. Also, too, I see the evidence as different against Turley and Roberson. Yes. The evidence against Turley, well, some of the evidence is the same, because under our theory and based on the facts that were presented, the plan to essentially frame Leonard McSherry was a plan that was concocted prior to April 16th between both Roberson and Turley. So let me, if I may, what was the evidence of fabrication that was before the trial court? Now, we used a familiar format. They used a statement of undisputed facts. We used a statement of genuine issues. And the evidence before the trial court included the following. Turley prepared two reports of an alleged interview of Candace that included the intimate details of the inside of McSherry's house. That's referred to as the excerpts of record 1069, 1070, 1074, 1075, and 1076. The reports are in the record at 206 and 1222. Turley testified at trial that he obtained the details from Candace at the two interviews, including the pictures on the wall, the bed size, the color of the bed sheet, the accordion door, the shape, size, and location of the mirror, the windows, and that Candace had heard a bird chirping in the next room. That's at 1071 and 1072. We also demonstrated that McSherry was convicted and that he was innocent, 1075 and 1076. So that established the predicate, and I don't think the facts that I just related are disputed. To impede. But how does that relate to Roberson? Because Turley's the one that testifies, correct? Yes. And Turley's the one that she says that if you ‑‑ I guess where I see the strongest part of your case is not really in how the questions were asked. It would be that the deposition testimony of the victim that she said, I never sent those things to Turley, okay? And then Turley testifies to those in trial, correct? And he puts them in a report. Right. I don't see the same connection of what she repudiates as ‑‑ I mean, let's assume if we say that that's a tribal issue that Turley fabricated those things. Right. I don't see the same link to Roberson. Well, Roberson is accused of supervisory violation of his supervisory role, and we had evidence from expert witnesses concerning what the supervisor should have done. But more to the point, you know, part of the evidence of a constitutional violation is Turley's two reports about the inside of the house and his testimony. But that's not the only evidence of a constitutional violation. Our claim here is one that starts on April 16th with the purported interview of the child that was done at Roberson's request. You remember, the record shows, that what actually happened is they had a suspect in custody. His name was John LaRocca. And John LaRocca was arrested, and he was exonerated and released by Turley and Roberson. Roberson was assigned the exoneration. And Turley and Roberson released John LaRocca. And that was the day before. And they exonerated him. There's a form, and there's a finding that he's exonerated. He didn't do the crime. The next day, Roberson sends Turley to interview Candice for the first time. And they testify that the reason that they went, that Turley went the day after, was to put Roberson I'm sorry, to put LaRocca into a photo lineup that just happened to include McSherry. Now, the jury could find, based on that evidence, that the reason for going to interview Candice the day after LaRocca was exonerated was a complete fabrication. There was no reason to go to see Candice the day after Roberson and Turley exonerated LaRocca, because he was released, and he was no longer a suspect. So why did they choose to send Turley the day after the only suspect was exonerated to put that suspect in a photo lineup that happened to include McSherry? Could be a legitimate reason. But it's for the jury to draw. But the adverse inference that could be drawn is that they did it in order to create an opportunity for Turley and Roberson, because Roberson was the one who sent him, for Turley and Roberson to interview Candice and to begin to teach Candice not who the rapist was, but to teach Candice the picture of the fellow who they wanted Candice to believe was the suspect. You set up for yourself the standard that they knew he was innocent. And I haven't heard anything yet that – I mean, it's a tough standard. Yeah. But I haven't heard anything that speaks to that. I've heard things that say, you know, they wanted to point the finger at McSherry, but that doesn't include the possibility that's because they thought he was guilty. Well, I mean, there is, of course, that the jury could find that the stated justification for going, I mean, they could draw the inferences that they were trying to set McSherry up. That still doesn't include the possibility that he was guilty. Okay. But look at the evidence, Your Honors. But there is evidence that we presented to Judge Klausner from which a jury could find that they knew he was innocent at the time Turley went on the two days to show repeated pictures of both McSherry and also of the car, which of course is, as Judge Callahan indicated, you know, she denies she ever picked out the car. But the evidence that they believed, that you can draw the inference that they believed that he was innocent, comes from the conduct that occurred after April 21st. That was the second day of the interview that Turley had, which, by the way, was alone, you know, contrary to the practice that D.A. Lamb said he would never do, and not videotaped or audiotaped. But the conduct in the case that says it's a constitutional violation to question in that manner. No, there isn't. But that's not the point. The point is that this is all evidence of a number of issues, of a number of items from which the jury could decide that there was a plan to frame this guy that culminated in the testimony at his trial, testimony that could not have possibly been truthful. But I want to get to Judge Clifton's point about, you know, what's the evidence from which a jury could infer that they knew he was innocent? And that evidence is the conduct of Turley and Roberson after April 21st. Now, let's put this in context. On April 21st, if you believe their testimony, if you believe their evidence and that they're telling the truth, they believed on April 21st that the prime suspect had become Leonard McSherry, the prime suspect of a brutal crime against a 6-year-old. Now, the jury could infer from the subsequent conduct of Turley and Roberson in their investigation that they reasonably believed McSherry really wasn't the rapist, and that instead they were building a false case against him when the real rapist was still at large. Take a look at the surveillance evidence that was before Judge Klausner. Would police officers let the perpetrator walk the streets of Long Beach without any surveillance for three whole weeks after he was identified as the prime suspect? They did not begin the surveillance of McSherry until May 12th, 1988, and then only conducted surveillance for a few hours. Could the jury conclude that the delay in conducting the surveillance of the prime suspect was innocent? Sure. Maybe they could. Who knows what the explanation might be? That they reasonably thought he was guilty, unfortunately Mr. Sherry has a record of these sort of crimes, correct? Even though we know he's factually innocent of this. Which is what made him an easy mark, because he had this prior history. But if you thought, Your Honor, that... But what I'm saying is when you're talking about whether you thought someone was guilty or not, there certainly is a lot of evidence that these type of crimes involve recidivism. And unfortunately your client is a convicted 290 registrant and all of that. And so how does that show their intent to frame him? Why doesn't it mean that that's why you think it's the guy? I mean it's not like he's a reverend with no record. No, but that's exactly the reason why their conduct after April 21st when they say he became this prime suspect, because he had a prior history, because he was convicted of rape, and because this was such a brutal crime. That if they really believed that McSherry was the rapist, the jury could reasonably conclude that they would have slapped a surveillance team on him on April 22nd and followed this fellow until they could arrest him, so that he was not in a position to rape or attack another young girl in Long Beach. But they didn't do that. They acted as if they weren't concerned that this brutal rapist, who they identified as the main suspect, was not the main suspect. They didn't worry about it. They didn't do anything consistent with let's get this guy under surveillance. Let's get him arrested. But there's also evidence in the record that they had all of the descriptions that were given immediately after the rape occurred, by Candace, by her brother, and by the only adult witness, Robin Davis. And there's evidence in the record, their descriptions are there, and the jury could conclude that the descriptions that were given immediately after the event do not describe in any way, shape, or form Leonard McSherry. He doesn't fit any of those descriptions. And so you have the lack of a description, and then you have this statement that on April 21st he is the prime suspect, and they don't do anything about it for three and a half weeks. And from that evidence, I think the jury, it wasn't for Judge Clousen to draw any inference one way or the other. The jury could conclude that, in fact, the reason they didn't act as though he was the prime suspect is because they knew he wasn't the prime suspect. They know he didn't do it. I want to touch on just a couple of other points. The defendants, again, as they did before, claim that there's no liability here because of the independent investigation that the district attorney in the declaration said he performed. That's the Smitty case, and under Smitty I, you know, all that does is create a rebuttable presumption. And there's no dispute, and there's evidence before Judge Clousen showed, that Mr. Lamb may have thought he was doing an independent investigation, but he relied on the very evidence that the jury could find was either fabricated or tainted, including the April 19th, the April 21st, the May 18th, the May 19th, and the May 24th reports by Turley. And it is very obvious that whatever the nature of Mr. Lamb's investigation, he was greatly influenced by Turley's reports concerning the inside of McSherry's house. It was the cornerstone of his closing argument. He mentioned Candace's identification through Turley of the house details no less than six times in his closing arguments. That's at the ER 787, 791, 831, 834, 836, and 837. It's the most mentioned evidence. What does the record show about Lamb's questioning of Candace's to the interior of the house? What did she tell Lamb as to the interior of the house? The declaration says nothing about the interior of the house other than she ñ other than he testified ñ that he interviewed her and he believed her. Well, I have a question about one of these reports. Yes. This is the investigative follow-up that's at 3029 of the excerpt of record, investigative follow-up. What's the ñ On 5-24. I'm sorry. April ñ the 24th, Your Honor. This is Turley's report about Wormack and Turley's interview of Candace about the interior of the house. On May 24th. Dated 5-25-88. And you've read this thing probably as many times as I have. It goes through all of these similarities. But then they say on page 2, Turley says on page 2, it should be noted officers did not observe a white push-button phone. And, of course, she just said it was a white push-button phone. But only located a black rotary-type phone. Investigators also noted that the victim stated she called the police on the phone. And due to this statement, investigators think the victim is remembering the reporting party's phone who called the police when the victim was found. If they were fabricating all of this, why would they put this information in there that's wrong about the telephone? You know, I don't know, Your Honor. I don't really know. But that's a decision not for respectfully you or Judge Clauser. That's a difference of that's an argument to be made to the jury so that they don't draw the inference that all of the other very, very specific details that couldn't possibly have been the result of Candace's own memory were fabricated. So, yeah, they talked about the white phone. But they had an explanation for it. Now, who knows whether that was right or wrong. But, again, that's a factual issue that the jury has to decide, not Judge Clauser. And later testified at the preliminary hearing that it was a white push-button phone also. No, I don't think at the preliminary hearing she testified to that, Your Honor. The only thing she did at the preliminary hearing was her testimony was very short. She didn't say I don't have it right here. But I'm confident she didn't say anything about the white phone. Well, you may be right. Maybe in her declaration. But the point is that that's the very reason that this case has to go back for trial. Because there are conflicting inferences. I'm not saying that I'm going to prevail. I'm not saying that all of the arguments that I'm making here are going to be accepted by the jury. But there are arguments to be drawn from the inferences from the evidence. And the fact that the reports appear, you know, that there's an argument to be made and an inference to be drawn, that the reports in the testimony were false, there's an argument to be made and an inference to be drawn, that the reason they went to see Candace in the first place was a fake reason, was false. There's inferences to be drawn from their conduct after they say McSherry became the main suspect. There are inferences to be drawn from the wildly different descriptions that the witnesses gave on March 12th, right after the rape, to McSherry. Whether the jury will believe it or not, I can't tell you. But it is for the jury to decide. And you're over the top in terms of time, and you wanted to reserve some time for rebuttal. I think your time for now has expired, but we'll still give you a minute for rebuttal. Thank you. Your copy of the blue brief is. Thank you. Yes. My note and my wife. Good morning, Your Honors. Nolan Hall, Aikerman Centerfit on behalf of the city of Long Beach, officers Turley and Roberson. The problem with the argument that Mr. McSherry's counsel is making is that we are faced with summary judgment, and it is at the summary judgment when the parties are required, where there is a claim of qualified immunity, to put all their cards on the table. Now, what we have heard here this morning and is replete through the briefing that's been provided to us is, well, a jury might infer this or a jury might infer that. The problem is one can infer all sorts of things from all sorts of facts, but there is no fact that has been presented in the reply papers to the summary judgment which show any real evidence that anything wrong took place. Well, let me ask you this. I would like you to focus on where I'm tripping up is on the, and not that I, I don't even know whether it's, this victim was very young when it happened, and she's much older now, and she knows that she was part of someone that was factually innocent was convicted, and so there would be a lot of things that someone could argue at trial as to why she changed things, but she does say in her deposition testimony, I never said certain things. You know, I never gave that description. I never said those things. And what we know is that Officer Turley testified that she did say some of those, okay? So why isn't, doesn't that create a triable issue as to fabrication regarding Officer Turley? The answer is I do not believe so. The deposition is 14 years after the events. Okay, but tell me why, okay, that's why, those are arguments that you make to a jury.  Why, if that's before I have me in front of me at summary judgment, and she says I didn't say it, he said she did, and they can't both be true, why doesn't that give him something, doesn't give, why doesn't that give the plaintiff or the appellant in this case something of a triable issue regarding Turley? It may be an arguably triable issue, but on qualified immunity, you don't use, you don't use hindsight. We have cited a number of cases, beginning with Saucier, that you don't use 20-20 hindsight in these situations. In virtually every qualified immunity case is a situation. Well, I completely, I completely understand that. And that's why I'm really not buying into the, you have to question child victims in a certain way or anything along, I'm really not buying into that. But the question is if when she says I didn't say that, the officer said that she did, you know, lying is something that. I think the answer, I'm sorry. We get that. You know, that's going to be a constitutional violation if there's a triable issue as to that. Well, the issue on summary judgment, and I believe the correct answer to your question, Your Honor, is that how material is it? Because at the time of summary judgment, when the court, this court reviewing this de novo and the trial court looks at this, part of the test is how material, and it's up to the court to decide material. How could witness says I didn't say that, police officer testifies she said that, if in fact somebody reaches the conclusion the police officer is knowingly lying, how could that not be material? Whether somebody, a child can recall or an adult, a young adult can recall 14 years later. You're asking us to disbelieve a witness, which certainly might be perfectly reasonable, but I don't see how that's a summary judgment issue. Well, at the end of the day. Credibility is almost always for the jury. That is absolutely true. But the problem in this setting on qualified immunity is that the materiality is determined by this court and by the judge. But the materiality here isn't that hard because the trial, the prosecutor argued at trial, because this child was so young and was really all over the map in the things that she said, the reason that the prosecutor argued to the jury how we know that this child is right in these identifications, even though there's problems, is how could she have described that house with that kind of specificity if in fact she hadn't been there? So it's very, I mean, I know I was a prosecutor with kid cases for a long time, and the first thing that you glom to is because kids are kids. And I mean, that, you know, but anything that it's like, anything that corroborates what the kid says, and if the kid, say, gives the singing bird, you know, this is what it looked like, all of that, and I mean, that's very significant. And the prosecutor argued that. So I think we know that that was material to the conviction. Well, I think, let's assume for the purposes of this argument, there is a conflict in this testimony. The truth of the matter is, with the situation we're confronted with here, is it doesn't make any difference. Let's say that Officer Turley testified dishonestly during the trial. The problem that the appellate has here is that testimony during trial is absolutely immune. But this isn't a case involving testimony during trial. It's a case of fabrication before the trial of information that then, among other things, was fed to the prosecutor making the decisions. If it is fabrication before the trial, if that's the argument, which I didn't see in Appellate's argument. Nobody could believe that Turley suddenly decided to tell a story in the stand that had never been told before. The whole point of getting to the trial is that he has put together this case premised on certain facts which may not be true. And if he knew they were not true, it's awfully hard to see how that's not a constitutional violation that's actionable. Well, the case, I think, that addresses this issue which you're raising is really the Hervey v. Estes case, which we have cited in the brief. And what Hervey says is that if there is a claim of fabrication of evidence, then outside of trial, outside of testimonial matters, then you look to apply qualified immunity. And when you apply qualified immunity, you have to demonstrate, as the plaintiff, if at the pleading stage, a heightened pleading, at the summary judgment stage, it's just not a matter of some scintilla of evidence, you have to make a substantial showing. And then the next thing you have to do is... Let me interrupt you for a second. Let's look at it this way. Let's suppose, for a second, this case goes to trial. And the issue is whether it's really fabricated evidence that was material in getting this guy wrongfully convicted. You start from the proposition that she was never in this house. And then you have a situation where he says she said this, and then she denies it completely. If you were to try that case and submit a special verdict to the jury and ask the jury the question, did she tell the truth or did she not, when she says she never said anything like that to Turley, in other words, the jury came back with a special verdict, yes, she never said that to Turley, would there be substantial evidence to support the verdict? And I think there would be. Where am I wrong? Well, I think the – I think where I disagree with you, Your Honor, is that the decision that you're suggesting here that goes to the jury, really under Hervey v. Estes is for this court to decide the materiality. No, this is credibility of witnesses. You have the victim saying, I never said that to Turley, ever. I never said anything like that. Turley says, yes, she did. The jury rules and comes down on the side of the girl and concludes, she never said that to Turley. Now, if she never said that to Turley, where did Turley get it? There's enough to support the idea that it was fabricated. Credibility is for jurors. This is the disputed issue of fact. Did she or did she not tell this to Turley? Credibility, as you said, of course, is a matter for the jury to decide. But in this situation, what the appellant is faced with on a summary judgment is not what a jury might speculate. If we assume the jury could conclude that he was lying, you argue, too, is that wasn't material. I said, how can it not be material? Well, tell me, how is it possible that a police officer lying about what a witness said, resulting ultimately in a conviction, isn't material? The test for materiality in this situation is not that. All right. Here's an example. If she said she was chewing gum and she said she wasn't, he said, okay, that's not material. If the lie is as to what the inside of the house looked like and the prosecutor is arguing the reason that the victim properly identified this person, even though she's only 6 years old and even though there's all sorts of problems in the lineups and the photos and the car and there's all this stuff, the way we know she's telling the truth is because her description of the inside of that house matches it to a T. It's material. There are some conflicts, there's no doubt. We're probably not going to see eye to eye on this, but there are other things I think you want to go through. I have to tell you I agree with Judge Callahan. I handled hundreds of these cases, and it's their he said, she said kinds of cases. And the first thing I did and the first thing every police officer I ever worked with did was try to do exactly what happened in this case. Oh, you say you were in somebody's house. Tell us about the inside of the house. And if the victim got it right, that was strong corroborating evidence that the victim was telling the truth. If the victim got it wrong, that was strong evidence that the victim was confused. This is extremely material. It's used in every one of these cases. Well, one of the very interesting facts we have in this case is that Deputy District Attorney Lamb interviewed this little girl, and one of the things that she told him was that there was this picture in the house where she was raped of the stranger, as she put it. Now, there we have a conflict between what she told Deputy District Attorney Lamb and what she later says in her deposition. Okay. Where is that in the record? I want to go right now to the record and see exactly what she said to Lamb. Let me see if I can find that for you. I recall we cited it in our brief in the exact sections. On the bottom of page 10 of your brief, you talk about she had seen a picture of the stranger, but then there's a whole series of six ER references. So I presume it must be in that range. Yes, it is, Your Honor. So 6 ER 1437 through 1445 appears to be the range. That is the range, Your Honor. It is on page 10. I guess I'm not sure where this leads, though, because we know she wasn't actually in the house. I understand, and that is always the problem in these situations, because we have a situation that the plaintiff is not guilty. And that is, I think, the reason why the cases are pretty clear, that you don't view these situations when you apply qualified immunity or absolute immunity. By 2020 hindsight. Maybe you can help me out on what ties Roberson to all of this. Let's say there's a triable issue that Officer Turley was a liar. What evidence is there in the record that the city's got some sort of policy to teach officers to lie or not to prevent them from lying or that a supervisor that doesn't take the statement that doesn't testify in court? How do you tie that person in? I don't think there's anything that ties Roberson in. There's no evidence that Roberson did anything. All I heard today being argued was, well, he was the supervisor, and a jury could infer something. What evidence is there in the record, is there, on the Monell issue about training? The only things that are in the record, there is nothing in the record about the training that took place for the Long Beach police officers. There is testimony by the officers that they did receive training and that they had gone to classes, et cetera. But as to the Long Beach City of Long Beach not providing adequate training, there is nothing in the record regarding that. Moreover, there are citations or purported citations to this record where the so-called experts of the appellant in depositions, which are not properly before this court, give all sorts of opinions as to what should be done and what should not be done. So there is no record before the district court or properly in this record as to any Monell violation on behalf of the city. Is the Monell issue even before this court? Only in the barest way. Essentially, there is an argument, I suppose, if there is some liability on the part of one of the officers, there might be a Monell argument. Well, let's get more specific. You didn't argue for, on behalf of the city, anything other than the fact that there was no constitutional violation and that the officers weren't liable. And you haven't made a separate argument to us saying that we should affirm a summary judgment with regard to the city because of the policy-type city responsibility, the typical Monell arguments. They're not here in your brief. No. The one thing we did cite, though, in our letter, which hopefully all of you received, was the Long v. the City of Honolulu case, which says even if there were policies that were incorrect or impermissible, if there is no unconstitutional activity, there still is no Monell liability. So your argument with regard to the city in front of us on this summary judgment is based on that there are no constitutional violations. Yes. That's it. Yes, it is. How old was Candace when the deposition was taken? About 20. Because she was 6 when she was abducted and raped, and the deposition was taken 14 years later. So she ‑‑ if you read the deposition in total, she goes back and forth all over the place. She makes differing statements, and each time one party asks her a question, she comes out one way, and then she comes out a different way. So I think there, too, we go back to how much materiality can be given to her deposition. Does she get sideways at all with Sergeant Roberson in her deposition? Is there any discussion of things that she said or didn't say to Sergeant Roberson? No. There's two other points I'd like to make about ‑‑ one about her deposition. At the end of the day, and we get at the very end of it, what she does say is that she selected McSherry because she believed he was the one that had abducted and molested her. The other thing is that, and I haven't mentioned this, contrary to what Cancel has said about these interviews between Turley and Candace, is that there always was somebody else there. The first time, there was a nurse at the hospital when she identified McSherry in the picture. The second time in the hospital, there was a social worker. All the other occasions when there were interviews, there was Agent Wormack, and Agent Wormack was present during the entire time when they discussed the interior of the house. Agent Wormack, who is the best evidence ever, has never testified or presented any evidence that anything improper took place or that Officer Turley suggested all these things to Candace Byrne. And I think that's a very critical piece of evidence. It would be critical in front of a jury. I think it is critical now. Well, but then it's still, even if I take it the way that you say it, then I have two people that say she said it and one person that says she doesn't. I still have to assess who I believe. I mean, if you look at the jury instructions, they say, don't count up the number of people that say one thing and the other people say the other. That's not how we decide credibility. And any time you ask us to decide credibility to resolve an issue here, it's, you know, bingo, got a problem. It's not a summary judgment. Well, I suppose that where I disagree with you is that the test of materiality, and this would be part of it, is for this Court to decide as opposed to a jury, rather than saying, because the whole argument I'm hearing here is, well, a jury might come up with this. And the case law says, no, there has to be more than a scintilla of evidence. And it seems to me to keep arguing that a jury might come up with anything. Well, I guess two prosecutors already told you what they thought was material or not material. I can't speak for the third non-prosecutor here. You know, the question really isn't whether a jury would come up with something. The question is whether if a jury did come up with that, whether it would be supported by substantial evidence such as to sustain the verdict. That's the question. Well, in — but I don't think, in qualified immunity, that whether a jury could come up with something is the test. No, whether a jury did come up with something, and a court would conclude that what they came up with was supported by substantial evidence. Well, that's true. But I don't think that is the test with the defense that's being raised as to this claim. Thank you. Thank you. I say you have a minute, and you'll have a minute of your own, but I also want to ask you a question, even if it takes more than a minute. Sure. And that is, Judge Callahan is properly focused specifically on Mr. Roberson. What evidence — and we've talked a lot about Mr. Turley. I'd like to ask you to tell us what there is that ties in Mr. Roberson, and the jury could conclude that he was also responsible. Sure. Mr. Roberson is the one who exonerated LaRocca on April 16th and is the one who sent Turley to interview Candice and do the photo show-up. And the jury could find that there was no reason to do that other than to frame or to identify McSherry. But that's not the only thing. Roberson was a supervisor who was in charge, who set out the schedule for the surveillance. And as I argued before, you know, they didn't actually initiate — they didn't do anything to make it seem as though McSherry was the real suspect for three and a half weeks. And that was Roberson's thing. Roberson was the fellow who actually took the interview of Candice — not Candice, of Leonard McSherry on the day he was arrested, when McSherry gave the details of the inside of the house. Details were reflected in the interview notes of Turley the next day, when he went for the first time to talk to Candice about what the inside of the house looked like. Roberson, not Turley, was the one responsible for handling the only adult witness, Robin Davis. Roberson took the first statement of Robin Davis that identified a man that didn't look anything like McSherry. But he was also the one who decided not to interview Robin Davis again after supposedly McSherry became the main suspect for more than a month, and only after McSherry had been arrested and only after McSherry's picture had been plastered on the front page of the newspaper in Long Beach. And so it seems, you know, our argument — you know, we do have a supervisory argument here, but the main argument is that Roberson was completely tied in with Turley on the scheme that the jury could find existed to frame McSherry. From the very beginning, but when he sent him on a wild goose chase, when the guy who he was supposedly showing in the photo was already exonerated, to the interview with McSherry, to the interview with Robin Davis after McSherry was arrested and his picture was in the paper. And it seems to me it is clearly not as strong as the evidence concerning Turley, but there are triable issues concerning Roberson's involvement in the whole plan from April 16th to the time of trial. Roberson was also the fellow — the person at the lineup and was the one who talked to Canvas after the lineup when she supposedly changed her mind. Counsel, the deposition testimony is shaky. She was probably 14 or 15 years older than the 6-year-old was at the time. She herself says that a 5-year-old couldn't remember anything. Why would that deposition testimony be enough to support a jury verdict that she was telling the truth and Turley was not? Well, it's not the only — it's clearly not the only — That's not my question. Yes, Your Honor. My question is about the deposition testimony. The deposition — if you read the deposition testimony, she is completely consistent on the major points. That is, she never described the inside of the house. She never had any of those details that were ascribed to her. In fact, in her deposition, she said that's way too much information for a 6-year-old to remember. She never — how could she remember it as a 6-year-old if she couldn't remember as a 5-year-old what she said to an officer? Well, she does remember what she said to the officer. She remembers she didn't say what the officer ascribes to her. She does remember, Your Honor. The deposition is clear that she does remember. Now, there are arguments to be made that she shouldn't be believed when she's 18 about what she said and what she remembers when she was 6. But, again, that's not for us or for Judge Clouser to decide. That's for the jury to decide. But she's consistent. Look, 20 years ago, Justice O'Connor came to the Ninth Circuit. And she was asked by all the judges, what did you mean in Anderson v. Liberty Lobby, Sellotex and the Trilogy of Summary Judgment Cases that had just come out? Because up until that point, there was real confusion on the part of district court judges as to what to do on summary judgment. And Justice O'Connor said, what these three cases mean is as follows. Take a look at the evidence that might support a verdict. And if that evidence would not support that verdict at the end of the case, in other words, there's a verdict in this favor and you were to decide, no, it's not supported by the evidence, that's the end of the game. She said, do it early instead of late. And so the question that I always ask is, if we were to have a verdict in favor of your client, would it be supported by the evidence? So I look at this deposition to see whether it's substantial or whether it's such that it's all over the lot, such that a trial judge would say, after a verdict in favor of your client, it's not supported by evidence because this deposition, among other things, doesn't hold up. Okay. But on the principal points, she is consistent, Your Honor. You can't – I don't think a trial – I don't think a judge reviewing – you reviewing for substantial evidence would be able to conclude that she was all over the map on the important points or that she didn't convincingly say, I didn't – I never identified that car. I never said it was green. I never said it was – it was a station wagon. You know, she's clear on those points. And I was never in the house, so I couldn't have known those things. So it seems to me that there's plenty of evidence that would corroborate a substantial evidence finding That was before Judge Clouser. And whether – and, you know, she'll – who knows? I mean, I can't say that she will testify completely consistently with her deposition at the trial. I'm not sure. But we have her deposition testimony. We know she wasn't there. We're pretty confident she couldn't have ever said the things she said. She didn't waver on the principal points that she said she didn't tell thoroughly. It seems to me that there's substantial evidence there to support a verdict if we obtained one. That's a good answer. Thank you. If I may, just take my minute on the point that we raised last time. We raised it again, and that's whether, if there's a remand, when there's a remand, whether it should go back to Judge Clouser. And I know we dealt with that last time, and we raised it again. Last time, this panel said that it wasn't exactly fair of Judge Clouser to say there was no evidence on a Rule 50 motion because there was no evidence. We hadn't gotten to that point. But the Court said that they had no indication that, given a chance to review the evidence, that Judge Clouser would not review the evidence fairly. And I submit, Your Honor, that the best evidence that Judge Clouser has prejudged this case is his own minute order in judgment, where he concluded that, in a single sentence, that there was no evidence of fabrication presented, but if – but as we just discussed, there was evidence of fabrication. You just had to look to see. So it seems to me the best evidence that he has prejudged this case is he reached the conclusion that there was no evidence when, in fact, there was some. He could have disagreed with it. Counsel, this is not an easy case. It's not – it's not an easy case for the jury. But it seems to me that it's an easy case for a judge looking on summary judgment for the very reasons that you, Judge Callahan, have been talking about. Well, it wasn't an – it's not been an easy case for me. So that's that. You know, it's always much clearer to counsel on either side than it is – you know, I found that when I came up from that chair up here, suddenly, clouds. You know, it's always closer than you think. I'm sure that that's right. An advocate's position, in a lot of ways, is a lot easier than your position. And I – you know, I agree with that. But all I'm saying is that the judge in the – this Court, in the prior opinion, said to Judge Kasler, in effect, look, if you – if there's a summary judgment, we have every confidence you're going to review the evidence fairly. And all I'm saying is that it doesn't really look like he reviewed the evidence based on his minute order where he said there was no evidence of fabrication. He could disagree with it. He could take some of the legal arguments and say, oh, there was some fabrication evidence, but as Mr. Holland says, it's not material. He could have done that, but he didn't. He said there was none. And even a cursory review of this record suggests that there was some. So I see – so I would hope that you would consider our request, if and when there's a remand, that it go before another district judge. We thank both counsel for the argument. The case just argued is submitted, as are the other cases in today's calendar, and we are in recess. Thank you. All rise as part of the session is adjourned.
judges: Trott, Clifton, Callahan